IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RANDOLPH CORNELIO,<br><br>Defendant. | Case No. 17-cr-00321-DKW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 32 months into his 135-month sentence, Randolph Cornelio ("Defendant") asks the Court to reduce his sentence to time served because his medical conditions, coupled with the COVID-19 pandemic, present extraordinary and compelling circumstances warranting such a reduction. For the reasons set forth below, Defendant's Motion is GRANTED.

## RELEVANT BACKGROUND

On February 9, 2018, Defendant pled guilty to methamphetamine distribution-related offenses. Dkt. No. 48, 49. On May 24, 2018, this Court sentenced Defendant to 135 months' imprisonment and 5 years of supervised release. Dkt. No. 59.

On September 8, 2020, Defendant, proceeding pro se, filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) ("compassionate release motion"). Dkt. No. 81. Defendant argues his medical conditions—obesity, type 2

diabetes, diabetic polyneuropathy, high cholesterol, chronic breathing problems, and a high risk of cardiovascular disease—along with a large outbreak of COVID-19 at FCI Big Spring, where Defendant is housed, and the difficulty of protecting himself from infection at that facility, constitute extraordinary and compelling circumstances warranting release. *Id.*; *see also* Dkt. No. 90. On September 25, 2020 the Government filed a response opposing any sentence reduction, Dkt. No. 84, to which Defendant, through counsel, replied on October 9, 2020, Dkt. No. 90.

This order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the [BOP] to bring a motion" on his behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement). The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

As explained below, because Defendant has met his burden as to all requirements, the motion is GRANTED.

### I.  Defendant has met the Exhaustion Requirement

Under Section 3582(c)(1)(A), the first step in the exhaustion process is to submit a compassionate release request to the warden. *See also* 28 C.F.R. §571.61(a). There are then two ways an inmate may satisfy the statutory exhaustion requirement. *First*, if thirty days "lapses" from the warden receiving the request. 18 U.S.C. § 3582(c)(1)(A). This allows the warden a reasonable time

to respond to the inmate's request, but it also prevents the warden from unduly delaying the inmate relief by simply refusing to respond.[1]

*Second*, if the warden denies the request within the thirty-day period, the inmate must "fully exhaust[] all administrative rights to appeal." 18 U.S.C. §3582(c)(1)(A); *see, e.g.*, *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020). To exhaust all administrative rights to appeal, the inmate must follow "the Administrative Remedy Procedure (28 C.F.R. part 542, subpart B)." 28 C.F.R. § 571.63(a).

Defendant claims he submitted a compassionate release request to the warden of his facility on July 16, 2020, and that the warden never responded to that request. Dkt. No. 81 at 4; Dkt. No. 90 at 2–3. The Government argues the Court should reject Defendant's allegation because "Defendant has failed to file a copy of [the] purported request" and a search of the BOP database "reflects no such request from Defendant." Dkt. No. 84 at 3–4. As this Court and others have explained, the Court is inclined to accept a defendant's allegation that he submitted a compassionate release request, absent clear evidence to the contrary, because, especially for an inmate proceeding pro se, "'it [is] difficult for [an inmate] to

---

[1] *See United States v. Kazanowski*, No. 15-cr-00459-DKW, 2020 WL 3578310, at *4 (D. Haw. July 1, 2020) (explaining that "[r]equiring exhaustion fulfills two important objectives: (1) protecting administrative agency authority, especially in matters involving the agency's discretionary power or . . . its special expertise; and (2) promoting judicial efficiency by affording the agency an opportunity to decide the issue, whereby the controversy may well be mooted" (citing *McCarthy*, 503 U.S. at 145) (internal quotation marks omitted)).

4

prove at this stage that the [w]arden actually received his request.'" *Kazanowski*, 2020 WL 3578310, at *4 n.11 (quoting *United States v. Drummondo-Farias*, No. 12-CR-00174-JMS-1, 2020 WL 2616119, at *4 (D. Haw. May 5, 2020)). Here, there is no such contrary evidence, as the Government has offered nothing beyond argument in support of its search efforts and results. Thus, the Court accepts as true that Defendant submitted a compassionate release request to the warden of FCI Big Spring on July 16, 2020 and that thirty days lapsed without a response. Defendant has consequently met the exhaustion requirement.

## II.  **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission"). As this Court has explained, it is bound by the Commission's Commentary in U.S.S.G. § 1B1.13 regarding what constitutes an "extraordinary and compelling" reason warranting a sentence reduction. *See, e.g.*, *United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, *2–*4 (D. Haw. July 17, 2020).

Accordingly, the Court applies the following framework to determine whether COVID-19 presents extraordinary and compelling reasons to grant a reduction in sentence:

> [A]n inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*Kazanowski*, 2020 WL 3578310, at *7 (alterations in original) (quoting U.S.S.G. §1B1.13 & cmt. n.1(A)).  Defendant meets each of these elements.

The Court recognizes Defendant's medical records show he currently suffers from obesity with a body mass index ("BMI") of 34.7, type 2 diabetes, high cholesterol, and an undefined respiratory disorder resulting in chronic shortness of breath.  Dkt. No. 90-2 at 3, 8, 9, 15, 21, 27, 28, 35, 51, 62, 64, 66, 77, 81, 83, 107, 116, 125, 130; *see also* Dkt. No. 90 at 5 n.6 (calculating Defendant's BMI).[2]  Thus, Defendant has medical conditions recognized by the CDC as placing him at greater risk of a severe reaction to COVID-19.[3]

As the Court has often explained, demonstrating a high risk of becoming seriously ill from COVID-19 requires showing not only that a defendant is a

---

[2]The Court notes Exhibit A, Dkt. No. 90-2, which consists of Defendant's BOP medical records, is not currently in the docket.  The Court instructs Defendant to file the exhibit under seal as soon as the Court grants permission to do so.

[3]*See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – People with Certain Medical Conditions*, CDC (updated Oct. 6, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 11, 2020) (listing obesity, with a body mass index of 30 or higher, and type 2 diabetes as factors increasing the risk of severe illness if one contracts COVID-19).

member of an at-risk group, but also that there is "a high risk of contracting the virus because of the number of positive COVID-19 cases at the facility where [the defendant] is housed." *See, e.g.*, *United States v. Rodrigues*, No. 16-CR-00529-DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020). Defendant easily clears this bar. As Defendant details, *see* Dkt. No. 90 at 3–4, COVID-19 cases at FCI Big Spring are on the rise. As of this order, 398 inmates and six staff are testing positive for the virus.[4] This is up dramatically from September 8, 2020, when Defendant reported just five inmates and six staff were testing positive. Dkt. No. 81 at 2. Given these conditions, Defendant's chance of contracting the virus is alarmingly high.[5]

Defendant has also met his burden to show that were he to contract COVID-19, his ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and he would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A). As discussed above, FCI Big Spring is clearly experiencing a severe outbreak that is ongoing. As of September 24, 2020, Defendant reports "limited cleaning supplies, sporadic wearing of masks, and an

---

[4] *COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020). On this public website containing the coronavirus-related data for BOP facilities, the BOP notes that it "update[s] the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths daily at 3:00 p.m." *Id.*
[5] The Government argues "BOP has implemented a comprehensive response . . . to protect inmates." Dkt. No. 84 at 5–6. While this response may be effective at other facilities, it has clearly not been effective at FCI Big Spring, which even a cursory glance at the numbers reveals.

inability to social distance." Dkt. No. 90 at 9. And, as Defendant points out, *id.*, FCI Big Spring is not a medical facility designed to deliver life-saving health care to at-risk inmates like himself. It is a correctional facility with no evident handle on a very dangerous virus that has managed to penetrate its defenses.[6]

Because Defendant has carried his burden of showing that there are "extraordinary and compelling reasons" justifying his early release under 18 U.S.C. § 3582(c)(1), he is entitled to a sentence reduction.

### III. Section 3553(a) Factors & Risk of Danger to the Community

Even where a defendant has established an extraordinary and compelling reason justifying a sentence reduction, the Court must consider any such reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine Defendant is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." *See* 18 U.S.C. §3582(c)(1)(A); U.S.S.G. §1B1.13.

Defendant's 135-month sentence was at sentencing "sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public." *See* 18

---

[6] While it may be true that Defendant's medical conditions are well-managed, Dkt. No. 84 at 6–7, such evidence is not conclusive as to a defendant's ability to provide self-care and recover from COVID-19 while incarcerated.

8

U.S.C. §3553(a)(2).  However, Defendant is correct that the prevalence of COVID-19 at his facility and the risk that it presents to him personally alters the punishment analysis.  *See* Dkt. No. 81 at 6–7; Dkt. No. 90 at 12.  At sentencing, the Court did not contemplate placing Defendant at such high risk of severe reaction to a potentially lethal disease.  Thus, the Court finds that reducing Defendant's sentence and ordering him to comply with conditions of supervised release is just punishment under the specific circumstances presented here.

Regarding danger to the community, the Court agrees with Defendant that his case is distinguishable from *Aruda*, 2020 WL 4043496, where the Court denied relief, in part, because of the defendant's extensive criminal history.  The Court acknowledges that Defendant here has a sparse criminal history, and his crime was not one of violence, nor did it involve firearms.  *See* Dkt. No. 55 at 1–2, 25.  Prior to his conviction, Defendant maintained stable employment and was positively reviewed by his supervisor.  *Id.* at 26.  He has only a limited history of substance abuse and appears to have the genuine love and support of law-abiding family members.  *Id.* at 25–26.  Post-sentencing, Defendant has availed himself of vocational and educational classes while incarcerated, including substance abuse classes, and the Government does not dispute Defendant's contention that he has not incurred any disciplinary infractions.  Accordingly, the Court finds Defendant would not be a danger to the community if released at this time, particularly given

his forthcoming period of supervised release that will enable Probation to monitor his transition back to the community.

## CONCLUSION

Defendant's sentence is reduced to time served plus three days.  Defendant is ORDERED to begin serving his previously ordered five-year term of supervised release immediately upon release.  Defendant's release is also subject to the following:

1. For the first 18 months of supervised release, Defendant must submit to Location Monitoring, with the specific methodology to be selected by Probation, based, in part, on availability and technical feasibility, and must follow the rules and regulations of the Location Monitoring program.  Defendant must also submit to Home Confinement for the same period of time, during which he will be restricted to his residence at all times, except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by Probation or the Court.  Defendant shall earn leave as determined by Probation.

2. Within 24 hours of release from FCI Big Spring, Defendant must contact the United States Probation Office for the District of Hawai'i

by telephone at (808) 541-1283, or such other Probation Office as instructed by Probation or the Court;

3. Counsel are instructed to contact Probation immediately regarding the terms of this Order and Defendant's release and may propose additional or modified supervised release conditions, as appropriate; and

4. If Defendant returns to Hawaii, rather than Nevada or another Court-approved destination, for supervised release, Defendant must comply with the 14-day self-quarantine or other mandate required by State law.

For the reasons set forth herein, Defendant's motion for compassionate release, Dkt. No. 81, is GRANTED.

IT IS SO ORDERED.

DATED: October 12, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States of America v. Randolph Cornelio*, No. 17-cr-00321-DKW,
**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**